UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RICKY BAZILE**<br>    LA DOC #315955<br>VS. | **CIVIL ACTION NO. 3:13-cv-2186**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **JACKSON PARISH COMMISSION,**<br>**ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Ricky Bazile, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 1, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Jackson Parish Corrections Center (JPCC), Jonesboro, Louisiana, and he complains that he was denied prompt and appropriate medical care and treatment for an injury he sustained on May 27, 2013.  He seeks compensatory damages from the defendants.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff is an inmate in the custody of the LDOC; he is and has been incarcerated at JPCC.  On May 27, 2013, Memorial Day, at 7 p.m., he injured himself playing basketball. Plaintiff described the injury as a rupture of the tendon in his right knee causing paralysis from the knee to the ankle. He was carried to his housing unit and once there notified Corrections Officers Woodard and Leonard of his injury. They replied that there was no nurse on duty and

advised him to make a sick-call request on the following morning.

On the following morning, May 28, plaintiff complained to Lt. Parker who likewise advised plaintiff to make sick-call. At 1:30 p.m. plaintiff was examined by Nurse Freeman who advised plaintiff that while she was not qualified to make a diagnosis, the injury appeared to be something torn in plaintiff's knee. She scheduled an appointment at the LSU Medical Center in Shreveport and provided plaintiff with a crutch, but no medication.

On the following day, May 29, plaintiff was transported to the emergency room of the E.A. Conway Hospital in Monroe. Plaintiff was examined by Dr. Gyanendra Kumar Shama. Dr. Shama questioned the transportation officers as to why the plaintiff was not transported first to LSU Medical Center. Nevertheless, Shama gave plaintiff an injection for pain and ordered an x-ray examination. Thereafter plaintiff was advised to wait in the waiting room. An hour and half later plaintiff tried to get Dr. Shama's attention, but Shama advised plaintiff that he did not have time to converse. Thirty minutes later a nurse handed the transportation officer a sealed envelope and plaintiff was returned to JPCC.

On May 30 plaintiff saw no health care professionals; nor did he receive any medication.

On May 31 he requested a sick-call and complained of pain; he was examined by Nurse Freeman who advised plaintiff that Dr. Shama had diagnosed a bruised and strained knee and prescribed no medication for pain. Nevertheless, Nurse Freeman ordered IBU (ibuprofen) for pain and scheduled plaintiff for further treatment at the LSU Medical Center.

On June 4, 2013, plaintiff's leg "gave out" causing him to fall. At that time there was no nurse on duty and so corrections staff returned him to his cell via wheelchair.

On June 6, 2013, plaintiff was returned to E.A. Conway Hospital where an MRI was

performed. Plaintiff was initially taken to the hospital holding cell and then summoned to the emergency room where he was again seen by Dr. Shama who advised plaintiff that his knee was "really messed up" and that plaintiff was in need of surgery. Plaintiff was then "rushed" to LSU Medical Center and on June 10, 2013, he had surgery to repair the ruptured tendons in his right knee.

Plaintiff sued the Jackson Parish Commission, the JPCC and its staff, including Warden Ducote, Assistant Warden Stinton, the LDOC, and, in an amended complaint, the LaSalle Management Co. for failing to promulgate and implement policies and procedures for prisoners in need of immediate or emergency medical care. He also sued Nurse Freeman and Dr. Shama for their acts and omissions.

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based

on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

Plaintiff is an inmate in the custody of the LDOC. He complains that he was denied prompt and adequate medical care between the date of his accident (the evening of May 27, 2013) and the date he ultimately received surgical treatment (June 10, 2013). The constitutional right of a convicted prisoner to prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*,

239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings. To the extent that the defendants' choices establish negligence or even malpractice on their part, plaintiff still fails to state a claim since deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed, and that they drew that inference</u>. *Id.* at 837.

Plaintiff was ultimately treated for his injury and therefore, his claim is one of delayed and not denied medical care. Nevertheless, a delay in providing medical care can violate the Eighth Amendment, but only if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Other than the 2 week period he experienced pain, he has not identified any "serious harm" that has befallen him as a result of the defendants' treatment choices.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, August 12, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE